Sarah Sigmon died, testate, on the 12th day of October, 1937, and her last will and testament, dated September 1st, 1936, was probated by the surrogate of Essex County on the 14th day of December, 1937. Jacob Sigmon and Harry Sigmon, sons of the testatrix, in the will named as executors, qualified as such.
The will provides:
"Third: I give and bequeath to my daughter, Sophie Sigmon, the use for her own occupancy, free of rent or any other charge, of my residential property known as Number 181 Fairmount Avenue, Newark, New Jersey, during her lifetime and I hereby direct that for the period during which my said daughter shall so occupy the said premises, taxes, mortgage interest and water rents in connection with the said premises shall be paid out of my estate.
"Fourth: All the rest, residue and remainder of my estate, of whatsoever nature, character or description, the same may be, I give, devise and bequeath to my sons, Jacob Sigmon and Harry Sigmon, or the survivor, in trust nevertheless, for the following uses and purposes:
"1. From time to time to invest and keep invested in good and reliable securities and to collect and manage the income arising therefrom, *Page 471 
whatsoever it may be, and disburse such income in the following manner:
"(A) To use and disburse from said income of my estate first for the upkeep, taxes and carrying charges of my property as may be necessary; and
"(B) To use and disburse the balance of said income for the upkeep, care, maintenance, hospitalization and recuperation of my daughter, Sophie Sigmon, for and during her natural life."
"Fifth: Upon the death of my said daughter, Sophie Sigmon, or in the event that she shall fail to survive me, then at my death, I give, devise and bequeath the said residue of my estate as follows:
"1. I give, devise and bequeath one-fourth of the said residue to my son, William Sigmon, if he shall survive both me and my daughter, Sophie Sigmon.
"2. The balance of the said residue of my estate if my son, William Sigmon, shall survive me and my daughter, Sophie Sigmon, or the entire residue, in the event that my son, William Sigmon, shall fail to survive me and my daughter, Sophie Sigmon, I give, devise and bequeath as follows:
"(A) I give, devise and bequeath one-third of the said residue to my son, Jacob Sigmon, his heirs or personal representatives.
"(B) I give, devise and bequeath one-third of the said residue to my son, Harry Sigmon, his heirs or personal representatives.
"(C) I give, devise and bequeath one-third of said residue to Gilbert Goldman and Millicent Goldman, children of my daughter, Adele Goldman, equally, share and share alike, absolutely and forever."
"Ninth: I hereby nominate, constitute and appoint my sons, Jacob Sigmon and Harry Sigmon, as executors under this, my last Will and Testament, and hereby authorize and empower them or their successors in office to grant, bargain, sell and mortgage all or any part of my real or personal estate, for such price or prices as may in their discretion be for the best interest of my estate, and hereby authorize and empower them to execute and deliver all deeds, mortgages, bills of sale, assignments and other documents with or without covenants of warranty as may be necessary or proper to legally consummate such transaction or transactions."
The income from the property No. 181 Fairmount Avenue, together with the income from the remaining estate is not sufficient to care for the upkeep and proper operation of the real estate, which coupled with the fact that the buildings now upon the land are in a run down condition, that the character of the neighborhood has changed since the death of the testatrix, and the demand for property of the class to which the premises in question belong has decreased, make it advisable and for the best interest of the estate and the life tenant that the premises be sold. *Page 472 
The executors have entered into a written agreement to sell the property, but the purchaser raised the question as to their right and authority to sell the same under the will of Sarah Sigmon, and hence this bill for construction of the will and instructions as follows:
Has the power of sale vested in the executors under the ninth paragraph of the will terminated or expired at this time?
Does the power given the executors and trustees include the right to convey the life estate or life interest of the daughter, Sophie Sigmon?
Under the will the use of the property is given for life to the daughter, Sophie Sigmon, and the rest, residue and remainder of the estate, including all personal property and the fee in the real estate, subject to the life estate is devised and bequeathed to the executors in trust, with broad power of sale.
The daughter, Sophie Sigmon, is confined in the Essex County Hospital for the Insane, at Overbrook, and was so confined prior to the death of testatrix and has never been able to use or occupy the premises 181 Fairmount Avenue. There is not sufficient money in the hands of her general guardian to pay her hospital expenses now in arrears in the sum of $3,300.
Under date of June 30th, 1942, the executors' restated and supplemental account was approved by the Essex County Orphans Court, but this did not terminate their power of sale.
Reading the will, it plainly appears that the testatrix intended the executors and trustees to make distribution of the residue of the estate after the death of the daughter, Sophie Sigmon, and in making such distribution to exercise the power of sale vested in them by the will, and since the daughter, Sophie Sigmon, is still alive, that power continues in both the executors and the trustees. Foley v. Devine, 95 N.J. Eq. 473,476; 123 Atl. Rep. 248.
The trustees could also be empowered to make sale of the real estate by authority of R.S. 3:17-34, since under the fourth paragraph of the will, the real estate in question was *Page 473 
devised to the trustees in trust for a person for life, or until the happening of an event specified in the will. The building located on the premises, it appears, does not produce an income proportionate to the value of the land and, under these circumstances, by virtue of the statute, the Chancellor may, if satisfied that a sale would benefit the cestui que trust and remaindermen and such sale is not inconsistent with the intent of the will, order the executors and trustees, or the trustees alone, to sell the same. The statute provides that such sale may be ordered free and clear of any interest of a person claiming under the will, and the proceeds after paying taxes and assessments and costs and expenses of sale, held by the executor or trustee in accordance with the provisions of the trust.
"* * * It would seem clear that a testamentary gift of power of sale must stand upon precisely the same footing as any other testamentary gift; that the ascertainment and determination of its nature and extent is, as it would be in the case of gift of anything else, a matter of the ascertainment of the intent of the testator; and that such ascertainment and determination is to be gained as in all other cases from a consideration of the entire will and the surrounding circumstances. (Cf. Torrey v. Torrey,70 N.J. Law 673; Coyle v. Donaldson, 91 N.J. Eq. 138), and as well, therefore, by implication as by express words. * * *"Foley v. Devine, supra.
Under the will in question, and particularly the fourth and fifth paragraphs thereof, and considering the circumstances, it is apparent that the power of sale in the present case was given principally to carry out the trust during the life of the daughter, Sophie Sigmon, and, at the death of Sophie, to make final distribution; and until final distribution the power of sale so granted in the will will not terminate. Ordinarily, a power of sale and express directions to sell do not lose their efficiency by mere lapse of time. Morse v. Hackensack SavingsBank, 47 N.J. Eq. 279; 20 Atl. Rep. 961; Fidelity-PhiladelphiaTrust Co. v. Harloff (Court of Chancery, 1943), 133 N.J. Eq. 44; 30 Atl. Rep. 2d 57. *Page 474 
The power of sale in this case may be exercised by the executors during the lifetime of the daughter, Sophie Sigmon, where such action would undoubtedly be for the best interest of the estate and especially for the interest of the daughter, Sophie, for whose welfare as appears by the will the testatrix was most concerned.
The power of sale given to executors to sell and convey all of the testatrix' real estate, at their discretion, is sufficient to support a sale by the executors of not only all of the territorial extent of the lands whereof the testatrix died seized, but also all of her title interest therein, and I am of the opinion that their sale under the power will divest the estate of the life tenant and the residuary devisees and all of their claims therein. Hatt v. Rich (Court of Chancery,1900), 59 N.J. Eq. 492; 45 Atl. Rep. 969.
Present decree. *Page 475